IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SHERROD MORGAN,

    Plaintiff,

v.                                                                  No. 09-1056

KILGORE FLARES COMPANY, LLC,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

*INTRODUCTION*

    The Plaintiff, Sherrod Morgan, brought this action against the Defendant, Kilgore Flares Company, LLC ("Kilgore"), on March 10, 2009, alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-401, *et seq.* ("THRA").  Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*STANDARD OF REVIEW*

    Rule 56 provides in pertinent part that a ". . . judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  "The district court must construe the evidence and draw all reasonable inferences in favor

of the nonmoving party." American Civil Liberties Union of Ky. v. Grayson County, Ky., 591 F.3d 837, 843 (6th Cir. 2010), *reh'g denied*, 605 F.3d 426 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  However, to successfully oppose a summary judgment motion, "there must be evidence on which the jury could reasonably find for the plaintiff." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)); *see also* Paul E. Volpp Tractor Parts, Inc. v. Caterpillar, Inc., 917 F. Supp. 1208, 1223 (W.D. Tenn. 1995).  "When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356 (citation & internal footnote omitted).  "In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." Id. at 587, 106 S. Ct. at 1356 (citation omitted) (emphasis in original).  "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548).

*FACTS*

The following material facts are undisputed unless otherwise indicated.  Kilgore manufactures rescue flares and explosives for military use at its facility in Toone, Tennessee. (Compl. ¶¶ 4, 6.)  Morgan, a black male, originally worked for the Defendant as a materials handler and extruder complex operator from May 30, 2000 until March 14, 2005, when he was laid off. (Compl. ¶ 7; Dep. of Sherrod Morgan ("Morgan Dep.") at 18-21.)  The Plaintiff was rehired on

September 5, 2006 as an extruder complex operator. (Morgan Dep. at 30.) An extruder complex operator, among other tasks, operated computer control panels at the extruder complex, prepared chemicals used in the extruding process, took product samples, recorded data, and loaded and unloaded molds. (Id., Ex. 7.)

During orientation for his position, Morgan received a copy of Kilgore's Employee Handbook and its Equal Employment Opportunity policy. (Id. at 40-42, Exs. 10 & 11.) He also received a copy of the employer's Employee Safety Booklet and participated in safety training. (Id. at 21-22, 34-35, 40.) As part of the safety training, Morgan learned that Kilgore required extruder complex operators to wear personal protective equipment ("PPE"), including pyro or flash suits, when loading or cleaning the mixing room, when handling chemicals, or on other occasions as specified by the Defendant. (Id. at 21-22, 36-38.) Extruder complex operators were not required to wear PPE upon entering the mixing room if it had been cleaned. (Dep. of Louis Oliver ("Oliver Dep.") at 16-17.)

When Morgan was rehired by Kilgore, his first supervisor was Kenneth Darling. (Morgan Dep. at 30.) Following a period of transition in which he was moved to a Monday, Tuesday, Wednesday shift, the Plaintiff reported to James Green. (Id. at 31.) Morgan also occasionally worked overtime assisting supervisor Louis Oliver on the Thursday, Friday, Saturday shift. (Id.)

In August 2007 at around 4:00 p.m. near the beginning of a shift, Oliver witnessed a safety violation. In his deposition, he recalled as follows:

    A:    I saw him [Morgan] coming out of the mixing room.

    Q:    Now, explain to me the -- Well, explain to me first what the mixing room is, and then we'll kind of move forward.

    A:    Well, you had a building, and that's where they had the pot that they mixed

> the . . . I think it was teflon and magnesium . . . they have this big, old mixing pot, and you mix your stuff together. And as it's mixed, it becomes volatile. . . .
>
> \*   \*   \*
>
> A:   When I came out of the office, I saw Sherrod up there at the door with two other people, and at that point in time, he was, like, in the door. And I walked down from there because I saw . . . one of the other supervisors, and I went down and asked [Kalvin Sharpe] at that point in time if the room had been cleaned up. Because if it'd been cleaned up, they could be going in without . . . a flash suit. . . . And then when I got back, he was coming out of the room, and that's when I saw the last time.
>
> Q:   Did you actually . . . see him in the room?
>
> A:   He was in the doorway. So here's the door, and he was in the doorway with the door open.
>
> Q:   So just kind of standing right at the entrance with the door open.
>
> A:   He was at the entrance of the doorway both times that I saw him.

(Oliver Dep. at 15-16, 30.) Later in his deposition he stated that "I saw him in the door. I actually saw him going in the door and coming out the door." (Id. at 25.) According to Oliver, Sharpe informed him that the room had not been cleaned. (Id. at 16.)

Two other workers, Jeremy Fox and Jeffrey Dismuke, both of whom were white, were standing outside when Oliver made his observation. (Id. at 25; Compl. ¶ 9.) Plaintiff testified in his deposition that he, Fox and Dismuke "were seen coming out of the mix area by Louis Oliver -- he seen us coming out of the mix area without our PPE on." (Morgan Dep. at 48, 51.) Morgan acknowledged that the three were in the mix area without PPEs in violation of the employer's safety rules. (Id. at 50.) Oliver was upset and asked them what they were doing. (Oliver Dep. at 25-26.)

Dismuke and Fox were hired by the Defendant as material handlers on July 16 and 30, 2007, respectively. (Decl. of Nan Friedkin ("Friedkin Decl.") ¶¶ 5-6.) According to Friedkin, Kilgore's

4

human resources director, both men were within their probationary period in August 2007. (Id. at ¶ 7.)

It was Oliver's recollection that he suspected upon seeing the men that Morgan was loading without a suit. (Oliver Dep. at 27.) He did not believe Fox and Dismuke were loading because they were not permitted to do so, as they had not been fully trained. (Id.) Oliver stated that Morgan was assisting with their training and acting as their supervisor when running machinery, as he "had to have an experienced person there." (Id.) The Plaintiff stated in his deposition that "I had trained them, but I wasn't training them at the time. If my memory serves me correctly, they were previously trained by the first shift people before they actually came to Oliver's shift." (Morgan Dep. at 49.) Dismuke testified that he was being trained by Morgan. (Dep. of Jeff Dismuke ("Dismuke Dep.") at 13.) He related that "he'd explain to us and then we would, you know, do it if we understood what he was talking about it. If not, then he'd go through the steps and do it, and then we'd do it the next time." (Id.) According to Fox, on the day of Oliver's observation, he, Dismuke and Morgan had been loading materials into the mixing area. (Dep. of Jeremy Fox ("Fox Dep.") at 19.) None were wearing a PPE. (Id.) Morgan was demonstrating how to properly mix the materials used to make flares. (Id. at 20.)

Later that day, Oliver spoke with the three men in the facility's control room, reminding them that they "can't be doing that kind of stuff" and advising them they could have been fired for failing to wear the PPEs. (Oliver Dep. at 29; Morgan Dep. at 48.) Morgan apologized to Oliver several times for his actions. (Morgan Dep. at 52.) Because the Plaintiff was transferring to another department the following day, Oliver chose to overlook the incident. (Id.; Oliver Dep. at 30.)

Oliver and Sharpe discussed the matter the next week. (Oliver Dep. at 30.) Sharpe also

5

spoke with Joe Page, Kilgore's safety and health manager.[1] (Dep. of Joseph A. Page ("Page Dep.") at 8, 10.) Sharpe advised Page that Oliver had observed Morgan in the mixing room without a PPE. (Id. at 10-11.) Sharpe did not inform Page that other individuals were involved. (Id. at 11.) Page, along with Terri West, Kilgore's senior safety technician, met with Oliver to confirm Sharpe's statement and, according to Page, were told Morgan had "been in the [mixing] bay" and "came out of the bay without the PPE." (Id. at 12; Oliver Dep. at 35.) Oliver recalled reporting that he had seen Morgan leaving the building and that it was his impression the Plaintiff was loading up, as he "saw him in the door with a barrel and stuff." (Oliver Dep. at 36.) Oliver "admitted that what he saw he knew was wrong and that he was wrong, and he admitted to [Page] he was wrong in not taking action at the time." (Page Dep. at 12.) No other employees were mentioned in the discussion. (Oliver Dep. at 37.)

After the meeting, Oliver told Kilgore operations manager Keith Snowden about the incident and his conversation with Page and West. (Id. at 38; Dep. of Keith Snowden ("Snowden Dep.") at 7.) Oliver related to Snowden that "they asked [him] about [Morgan], and [he] told [Page he had] seen him leaving the mixing room." (Oliver Dep. at 38.) Page then advised Snowden he had reason to believe Morgan had entered a mixing bay without the appropriate protective attire. (Snowden Dep. at 10.)

A couple of days after the incident, Fox was called in to meet with Snowden and Don Heath, extruder operations director, in the breakroom to discuss the matter. (Fox Dep. at 10, 21.) Snowden

---

[1]The Plaintiff makes much of the fact that Richard BeDen, Kilgore's finance director, stated in his deposition that Page told him he heard about the incident from an anonymous call to the company's safety hotline. (*See* Dep. of Richard BeDen ("BeDen Dep.") at 11-12, 15.) However, he does not deny that Sharpe talked with Oliver and Page about the occurrence.

asked him if he had been wearing his equipment on the day he and the others were observed by Oliver, and he responded in the negative, adding that he was never issued a PPE. (Id. at 11, 22-23.) Following his investigation, Page met with BeDen, who at that time was supervising the human resources department. (BeDen Dep. at 12-13.) BeDen recalled that Page advised him that the Plaintiff was seen coming out of an area containing explosive materials without proper PPE or authorization (Id. at 15.) BeDen acknowledged that no one told him they saw Morgan going into the building. (Id. at 15-16.) Page advised BeDen that Oliver was the individual who saw Morgan without the proper attire and that he failed to promptly report the incident. (Id.) BeDen was aware of neither the Plaintiff's race nor the fact that Fox and Dismuke were with him when he was seen exiting the mixing room. (Id. at 16, 33.)

On August 20, 2007, the Plaintiff was transferred to the position of specialty mix operator under the supervision of Janice Wilson. (Morgan Dep. at 31.) BeDen testified in his deposition that, when he was told Morgan had entered an explosive area without proper PPE, he decided to terminate him. (BeDen Dep. at 18.) At the conclusion of Morgan's shift on September 7, 2007, Snowden met him at his new work area, picked him up and drove him in his truck to a company breakroom referred to as the "cap shop." (Morgan Dep. at 54.) While they were in the vehicle, Snowden informed him that he was being fired for a safety violation. (Id.) When they arrived at the breakroom, Oliver was waiting. (Id.) The Plaintiff was presented with a Disciplinary Notice setting forth the reason for his discharge as "Operator entered mix bay of Building 115 and loaded a batch of material without proper safety equipment or PPE." (Id. at 55 & Ex. 14.) Morgan refused to sign it. (Id. at 55.) The notice reflected the Plaintiff's violation of work rules 23, 24 and 31, which are as follows: (Id., Ex. 14.)

7

> 23. Entering into or accessing any hazardous operation that should be done by remote methods only, while that operation is in process or operating, i.e., entering mix building while mixing operation is in process other than times specified within the SOP or Process Specification.
>
> 24. Intentionally circumventing or by-passing in place safety controls or devices when such action leads to an unsafe condition.
>
> 31. Failure to wear required PPE as posted in plant or specifically listed apparel required within Process or Test Specifications.

(Id., Ex. 12.)  Violations of Rules 23 and 24 call for termination of employment.  (Id.)  A Rule 31 offense carries a penalty of a written warning and three-day suspension without pay for the first offense and termination for the second offense.  (Id.)

A few months prior to the PPE incident, Page heard that Morgan was taking shortcuts on safety, but nothing specific.  (Page Dep. at 15.)  He informally counseled the Plaintiff concerning the dangerous nature of his job, stating that "[y]ou know what this stuff will do; and if you do this, and if you're lucky, you're going to get in trouble with your job, if you're unlucky, you're going to get killed."  (Id.)  Morgan was not formally disciplined at that time.  (Id. at 15-16.)

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

The Plaintiff avers in this action that he was discharged because of his race.  Title VII and the THRA prohibit intentional acts of discrimination in the workplace based on race.  *See* 42 U.S.C. § 2000e-2(a)(1), Tenn. Code Ann. § 4-21-401(a)(1).  Discrimination based on disparate treatment, as has been alleged in this case, "occur[s] where an employer has treated a particular person less favorably than others because of a protected trait."  Ricci v. DeStefano, ___ U.S. ___, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009) (citation & internal quotation marks omitted).  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  Reeves v. Sanderson Plumbing

8

Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000).

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence in order to prevail. Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009), *reh'g & reh'g en banc denied*, (Nov. 25, 2009). Morgan bases his claim on the latter, which invokes the McDonnell Douglas/Burdine burden-shifting paradigm.[2] *See* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); Upshaw, 576 F.3d at 584. To establish a claim by circumstantial evidence, a plaintiff must first demonstrate a prima facie case of race discrimination by showing "(1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class . . . was treated more favorably than he."[3] Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 363 (6th Cir. 2010) (citation omitted). If he is successful, the burden "then shifts to the employer to offer a legitimate, non[]discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext -- i.e., that the employer's explanation was fabricated to conceal an illegal motive." Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009), *reh'g denied* (Sept. 29, 2009) (citation omitted).

The Defendant's motion focuses on the fourth element of the prima facie case. "To establish

---

[2]"Tennessee courts have looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying the [THRA]." Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001) (citations & internal quotation marks omitted).

[3]Instead of showing that he was treated differently from those similarly situated, a plaintiff may establish that he was replaced by someone outside the protected class. Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002). Morgan has not argued that he was replaced by an individual outside the protected class.

9

that an employee is similarly situated to a plaintiff, the plaintiff must demonstrate that he or she is similarly situated to the claimed comparator in all *relevant* respects." Perkins v. Harvey, 368 F. App'x 640, 644 (6th Cir. 2010) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998)) (internal quotation marks omitted) (emphasis in original). "In evaluating a proposed comparator, courts should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non[]protected employee." Id. (quoting Ercegovich, 154 F.3d at 352) (internal quotation marks omitted).

Morgan has identified three individuals he claims were similarly situated: Fox, Dismuke and Kenneth Irvin. Kilgore argues that Fox and Dismuke were not similarly situated because they were probationary employees at the time the incident occurred.[4] As the Defendant points out, in this Circuit, probationary status is a relevant consideration when determining whether a comparator is similarly situated. *See* Cameron v. Ohio, 344 F. App'x 115, 117-19 (6th Cir. 2009) (probationary comparator not sufficiently comparable to be considered similarly situated to plaintiff, a permanent employee); White v. Ohio, 2 F. App'x 453, 457 (6th Cir. 2001) (probationary and permanent

---

[4]The Plaintiff has proffered no evidence to contradict the affidavit statement of Nan Friedkin to the effect that Fox and Dismuke were serving a probationary period of employment at the time of the incident giving rise to his firing. Rather, he avers that "he is without specific knowledge to respond to this alleged fact." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. at 6.) "A denial based simply upon lack of information . . . is not treated as a denial. If the opposing party is unable to provide evidence in support of [his] denial of fact [he] must file an affidavit pursuant to [Fed. R. Civ. P. 56(f)] explaining why [he] cannot adequately oppose the motion." Bouriez v. Carnegie Mellon Univ., No. Civ. A. 02-2104, 2005 WL 2106582, at *4 (W.D. Pa. Aug. 26, 2005). No such motion has been filed by Morgan. "[G]enuine issue of material fact is lacking without filing a Rule 56(f) affidavit as required by the Federal Rules. The use of general 'without knowledge' denials is inconsistent with . . . the Federal Rules." Id.

10

employees are not "similarly situated"); Cooper v. City of North Olmsted, 795 F.2d 1265, 1270-71 (6th Cir. 1986) (probationary workers "do not stand on equal footing with permanent" employees, "and cannot be considered to be similarly situated"); Laney v. Ohio Dep't of Youth Servs., ___ F. Supp. 2d ___, 2010 WL 2465377, at *9 (S.D. Ohio June 10, 2010) (because plaintiff was a probationary employee, she was not similarly situated with permanent workers); Harrison v. Oakland County, 612 F. Supp. 2d 848, 863-64 (E.D. Mich. 2009), *recons. denied* (May 1, 2009) (permanent employee not similarly situated with probationary employee).  In doing so, courts have recognized that an employer "could have been less willing to forgive an employee's [actions] given extensive experience, than to forgive a similar deficiency in an employee just learning the ropes." Cameron, 344 F. App'x at 119.  Harrison is factually similar to the case at bar.  Therein, the plaintiff, a permanent employee, offered as his sole comparator a probationary employee, Sarah Gooch, who was a recently hired deputy in the sheriff's department where he worked.  Harrison, 612 F. Supp. 2d at 852, 863.  The court found that "[a]t the time [p]laintiff and Gooch engaged in the conduct he views as 'the same or similar,' [p]laintiff was serving as Gooch's training officer, and Gooch was a probationary employee.  Each of these two distinctions disqualifies Gooch from consideration as 'similarly situated' to [p]laintiff."  Id. at 863 (internal footnote omitted).  Thus, upon review of the caselaw, the Court finds that Fox[5] and Dismuke are not similarly situated to Morgan for purposes of the incident giving rise to Plaintiff's termination.

As for the remaining proposed comparator, the Plaintiff testified in his deposition that, two weeks after he was transferred to the specialized mix position, Irvin, another extruder complex

---

[5]After his probationary period expired, Fox was terminated on February 18, 2008 for failing to wear a PPE in a dryer bed room.  (Fox Dep. at 7-8, 14, 16-18; Friedkin Decl. ¶ 9.)

11

operator, was seen on video in the mix bay without a PPE. (Morgan Dep. at 68.) Instead of being fired, Irvin was given a three-day suspension. (Id.) According to Snowden's declaration,

> In May 2007, Kenneth Irvin entered a building at the Kilgore plant, wearing the proper personal protective equipment, to clean a granulator screen. There was not an operation in process at the time. After working on the screen for a period of time, Mr. Irvin was not able to see out of his helmet, so he removed his helmet from his head. Mr. Irvin did not remove his flash suit. After Mr. Irvin left the building, he reported to his supervisor, Kenneth Darling, and me that he had made a mistake and had removed his helmet prior to leaving the building. Kilgore gave Mr. Irvin a three-day suspension without pay for violating Kilgore's work rule number 31. Kilgore decided to suspend Mr. Irvin, instead of firing him, because he did not try to circumvent any safety controls or standard operating procedures or violate any other work rules.

(Decl. of Keith Snowden ("Snowden Decl.") ¶¶ 4-9.)[6]

---

[6]The Plaintiff takes issue with the statements made in Snowden's June 3, 2010 declaration on the grounds that he testified in his February 18, 2010 deposition that he could not recall any specifics regarding the safety violation and/or discipline Irvin received. First, the Plaintiff has not disputed that Irvin was disciplined or the type of discipline imposed. With respect to the factual basis for the discipline, the Sixth Circuit has held that a court may find inadmissible a post-deposition affidavit at the summary judgment stage if the affidavit "directly contradicts" the prior sworn testimony. *See* O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567, 593 (6th Cir. 2009) (citing Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006)). On the deposition pages cited by the Plaintiff, the following testimony was adduced from Snowden concerning Irvin's violation:

> Q:   . . . Are you familiar with a Kenneth Irvin[]? Well, just the individual.
>
> A:   Yes; I know -- I believe I know him.
>
> Q:   Okay. Have you -- Do you know if Mr. Irvin[]'s ever been alleged to have committed a safely violation at Kilgore?
>
> A:   I believe so; yes.
>
> Q:   Okay. Is Mr. Irvin[] still employed with Kilgore?
>
> A:   No.
>
> Q:   Okay. When was he terminated?

12

The Defendant posits that "[i]n the disciplinary context, . . . to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of '*comparable seriousness.*'" Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006) (citing Clayton, 281 F.3d at 611) (emphasis in original). In order to make this determination, courts are to "look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (citing Ercegovich, 154 F.3d at 352) (internal quotation marks omitted).

In this case, Irvin and Morgan did not have the same supervisor at the time of their offenses and discipline. There is no evidence the same person disciplined the two men, or that BeDen was aware of Irvin's offense and the consequences thereof at the time he decided to fire the Plaintiff.[7]

---

A:   I don't recall the date.

Q:   Okay. Was it after he committed this safety violation that you can remember -- you can recall?

A:   I don't remember the date.

Q:   Okay. Do you recall if he was given the written warning, suspension in relation to this safety violation?

A:   I don't recall.

(Snowden Dep. at 33-34.) There is no direct contradiction between Snowden's deposition and his declaration as to the underlying facts that led to the imposition of discipline because he was not asked about those facts in the deposition. A "deponent is under no obligation to volunteer information not fairly sought by the questioner . . ." Clinton River Cruise Co. v. DeLaCruz, 213 F. App'x 428, 434 (6th Cir. 2007) (quoting Aerel, S.R.L., 448 F.3d at 907).

[7]Morgan cites Seay v. Tennessee Valley Authority, 339 F.3d 454 (6th Cir. 2003) for the proposition that a plaintiff may show a comparator is similarly situated where all the persons

13

Moreover, the acts of the two men were not of comparable seriousness. They differed both in degree and motivation. Viewing the evidence in the light most favorable to the Plaintiff, it is clear that Morgan intentionally entered an area without any protective clothing, an act he knew was a safety violation from the outset, and did not self-report the incident, apologizing only after he was caught. Irvin, on the other hand, entered a building with the proper PPE and removed only the helmet portion thereof out of necessity when he became unable to see to perform his duties. Upon leaving the building, Irvin immediately informed his supervisor of his actions. As a manufacturer of flares for military use which required the handling of explosive materials by employees, Kilgore had safety procedures in place for a reason. While the actions of both men could have resulted in injury to themselves and others, it seems logical that Kilgore would not want to risk retaining an employee who flagrantly disregarded the rules.

As he cannot identify a similarly-situated Kilgore employee who was treated more favorably than he, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination based on race. Consequently, it need not address the issue of pretext under McDonnell Douglas/Burdine. *See* Colvin v. Veterans Admin. Med. Ctr., No. 08-4518, 2010 WL 2993998, at *5 (6th Cir. July 26, 2010) (because the plaintiff had not identified a similarly-situated employee who received favorable treatment, the court need not reach the question of pretext).

*CONCLUSION*

For the reasons articulated herein, the Defendant's motion for summary judgment is

---

involved in determining the plaintiff's discipline were aware of the punishment given to previous violators of the same policy. Seay, 339 F.3d at 480. There is nothing to suggest that such was the case here.

GRANTED and this matter is dismissed in its entirety.  The Clerk of Court is DIRECTED to enter

judgment for the Defendant.

    IT IS SO ORDERED this 26th day of August 2010.

                                    s/ J. DANIEL BREEN
                                    UNITED STATES DISTRICT JUDGE